We'll hear the next case on the calendar, Ashmore v. CGI Group. May I please record Robert Herbst for Mr. Ashmore. I'd like to take two minutes in light of the motion panels asking us to brief the issue of appealability. I'll spend two minutes to explain why the order is immediately appealable, either as a final order or as a collateral order. It put Ashmore out of court, even though he's the sole plaintiff, if we're right on the merits. Is it true that the trustee has been appointed now to take this claim? Yes, and she has not appeared on this appeal. She's not what? She hasn't filed any papers on this appeal, but she has been substituted. Why does she have to be part of this appeal? She doesn't have to be, no. Okay. But if we're right on the merits, he's the sole plaintiff with proper standing to give the district court subject matter jurisdiction and is substituting a sole plaintiff without standing for a sole plaintiff with standing. The order below deprives the district court of subject matter jurisdiction. And under those circumstances, there ought to be immediate appeal. But, moreover, the easiest way to conceptualize this is that this is the flip side of denying intervention to a party who has the absolute right to intervene under Rule 24A, either because the party has the right to intervene from a federal statute or because he claims an interest in the property or transaction of the lawsuit that existing parties do not adequately represent. Wouldn't the trustee, now that we all agree has been appointed, wouldn't that trustee have standing to pursue this cause of action? We don't think so, because Eshmore was given the absolute right to be the sole plaintiff with standing to prosecute his own case by a federal statute, 554C and 521A1, the abandonment provisions of the Bankruptcy Code, and therefore has the absolute right not to be substituted out of the case and be displaced by and lose control of the case to a trustee with conflicting and irreconcilable interests, because her interests are not to maximize Eshmore's recovery, but to make sure that the creditors recover. So that if the trustee and the CJAI settled a claim for a value that Eshmore considered to be not enough. And that is what's going on in this case. But that's where, at that point, if that settlement occurs, then there would be a final judgment from which an appeal could be taken. Not necessarily. Why not? Because under the McKinley Insurance Company case, which Judge Pooler wrote the opinion, there were similar issues of interplay between the two courts and the issue preclusion rules of the Third Circuit. And, in fact, Mr. Fassman has argued to the Bankruptcy Court that it may not consider the abandonment issue, because it's been resolved by the New York court. And the Third Circuit's issue preclusion rules are the same as in Mount McKinley Insurance, and it's sufficiently final for issue preclusion if there was a district court judgment, even if not yet appealed. And so there's no reason to believe that the New Jersey Bankruptcy Court would deny issue preclusion effect to this judgment below, which has not been appealed. It could approve a settlement that provides a full recovery to the creditors and full fees to the trustees and trustee and her lawyers, but doesn't compensate Eshmore for the loss of his career. And, in fact, they, as soon as the bankruptcy case was reopened, they told the trustee that whereas before they were interested in paying $800,000, that's down to $500,000. This is, and they could well approve a settlement under Rule 41A without court order. So this may never come up again. We may never have a chance to appeal. If there's a settlement and there's a Rule 41A dismissal, that's a dismissal. And then that's final judgment in the case of whatever sort, and then anyone who's aggrieved by that judgment can appeal. Well, it is not clear that, in fact, that is the, that's how it's going to work out. And, in fact — Can you follow up your statement that the trustee would not be interested in maximizing the recovery? Yes. Because the trustee, the creditors, there are about $42,000 in claims. And the case, this resulted in the destruction of Eshmore's career, and the economist in the case, the only economic expert who's valued the case north of $2 or $2.5 million. So — Is that one reason? There were only four. I'm sorry to interrupt. Maybe you should finish your answer. No, no, that's okay. Well, I was just going to ask, isn't one of the reasons that there are only $42,000 in claims when there were $300,000 or so in scheduled debts, excuse me, that the trustee looking at the debtors, the creditors, looking at the schedules, would not see that there were any assets here and it wasn't worth filing a claim? No, they could. First of all, many of the claims, the largest claim was to the Department of Education. That was disallowed by the bankruptcy court because Mr. Eshmore is not in default. So that's the largest reduction. So I guess the issue of appealability is of concern to the court. I wanted to devote some time to the merits as to why this needed to be fixed. I mean, Your Honor's question does — The merits, as I think you always question. Yeah. And the merits in this case, I mean, you need to fix this, this ruling below, that a pro se debtor who fully and accurately lists this lawsuit and this bankruptcy petition in the SOFA, in the Statement of Financial Affairs, the right court, the right title, the right index number, in the only place in the petition which specifically calls for listing lawsuits, and then fully discloses all the particulars of the lawsuit to the trustee and the bankruptcy judge, the trustee fully investigates the action to decide whether to administer it for the estate, if it could be settled quickly, she said. She finds that it cannot be settled quickly, can't find a lawyer to take it, determines not to administer the estate, and closes the bankruptcy case, saying it's fully administered. The discharge says that the estate has been fully administered. She tells Judge Torres that the case can proceed outside a bankruptcy court jurisdiction. And the only reason — the only reason that this is not an abandonment is that he didn't also list this claim, which really had no value in the Schedule B. Now, isn't it — I mean, there are rules. Only property that is adequately scheduled under 11 U.S.C. 521A1 is eligible to be abandoned under 11 U.S.C. 554C. Right. And 521 — Wait, can I — let me — so the question is whether Ashmore properly scheduled the claims in the suit. Yes. And 521A1 includes the SOFA. It's got three parts, subset — B1, B2, and B3. It doesn't say only scheduled under 521A1 — B1. So, in fact, the text really is designed to include the SOFA. And recently, the D.C. Circuit in Marshall and the Seventh Circuit in Spain called the SOFA one of the schedules involved. So from a textual point of view, the decision below is wrong. But it's also wrong in terms of policy. The purpose of these — of this disclosure provision is to make sure that the trustee finds out about the claim and the lawsuit has an adequate opportunity to investigate it, investigate it, and decide whether to administer it for the estate or not. She did that because of the extensive nature of Mr. Ashmore's disclosures. He gave her the complaint in the case. He gave her — he gave her — he gave the bankruptcy court in front of her lawyer a big speech about what the case was all about. And she had — there's nothing in this record that the other side has pointed to that was not disclosed, that she didn't know about, that she should have known in order to make a decision about whether or not to administer this case. So from a textual point of view and from a policy point of view, you need to fix this. You need to join the other circuits that say that — that don't exalt form over substance and say it's the nature of the disclosure, it's the adequacy of the disclosure that is important. And, in fact, in IASI — Can I — can I — will you let me intervene? Absolutely. Thanks. Yes, Judge. So if an asset is included in the SOFA but not in the schedule of assets and liabilities, does the debtor, in your view, have to make an additional showing that the trustee or the — and or the bankruptcy court was actually aware of the asset? Well, no, I think you — I think you could decide either that it was sufficiently scheduled because it was in the SOFA or you could decide that, as the Third Circuit did in Kane, that it was unscheduled but adequately disclosed. And even in the opinion in IASI that — on which the defense so heavily relies that Judge Lynch was a part of the panel, when they cited the Shortsala case, it said, while properly scheduled estate property has not been administered by the trustee, normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed. So in decisions of the Second Circuit, including that one, after IASI, this circuit has even emphasized the importance of the adequacy of the disclosure and the ability of the trustee to investigate rather than the formalities. Your adversary suggests that the information in the SOFA largely involves past finances, not present assets, so that if you include an item in the SOFA but not in Schedule B, that that could suggest that the debtor previously had an asset but no longer possesses the asset. What's your response? It says list all suits and administrative proceedings in which the debtor is or was a party within one year immediately preceding the filing of the bankruptcy case. That's including currently. So he listed this case among three others, and he listed it accurately and clearly. And by the way, it's done electronically. And at the time this was done, the Schedule B didn't call for generally claims against third parties, including lawsuits. It's been changed in 2015 just to remedy that confusion that was involved here. So now the Schedule B says list all claims against third parties, whether or not you sued or not. But that was not the situation in the Schedule B that was filed, the form that was used back in 2013. And so he's a pro se debtor. There are no instructions. He lists this with its right name, right index number, right court. And then he goes forward and gives the copy of the complaint to the trustee, explains the status of the case at length, which we cite in our brief, both in letters to the trustee and at the hearing before the bankruptcy judge. It's fully disclosed. The trustee has never disputed that she had adequate disclosure. And she just makes an informed judgment, as she told Judge Torres the last year. I made an informed judgment to let Mr. Ashmore prosecute the case. And she files a — Can I just go back to Ayazi for a minute? You emphasized the word undisclosed in a sentence from Ayazi. But in Ayazi, the plaintiff had listed the lawsuit on the Statement of Financial Affairs, just as was true here. That's true. But the only thing I pointed out was that in citing Shahrzada, which really emphasizes disclosure, not so much the issue of the formalities, the unpublished panel of which you were a part — I want to just go back. And then you said this circuit has relied on that language after Ayazi. And I'm trying to — Well, there's another unpublished opinion called IBOC, which we cited in our brief, which also — which says even if there was — in which there was no disclosure anywhere, and it said even if oral disclosure is sufficient, that there wasn't oral disclosure here. Even if? Even if. That case is saying there was no kind of anything, so, of course, there's not an abandonment. Correct. But, you know, when Judge Gariffas, who wrote the district court opinion in Ayazi, wrote that opinion, there was no circuit court opinion that had delivered some insight on it. And he found the policy choice to be a tough call. But since then, the Seventh Circuit in Spain has said — has called the SOFA a schedule. The tenth — the D.C. Circuit in Marshall last year, I think, has called it a schedule. And all of the circuits, including the Third Circuit, which is the one that — in Kane, the one that supervises the New Jersey bankruptcy court where this bankruptcy petition, bankruptcy case was — was, has said that — the same thing. It's either — it's either — you either — the trustee either considered it scheduled and exercised her judgment about whether it was worth pursuing for the estate, or we consider it unscheduled but adequately disclosed because it wasn't concealed. So the emphasis — Can I ask one final question, which has to do with what the trustee did in this case, which I find peculiar. I don't know if there's anything wrong with it, but it's peculiar at least. The trustee entered an agreement with your client — Yes. — saying, you can go ahead and pursue this, but in the process of doing that, thou shalt not say I abandoned this. Now, I understand you have an argument that I don't really want to get into as to why that's technically not what he agreed to do, or he only agreed to not argue abandonment in certain circumstances. At the end of the case. But I understand that. Put that aside for a second. All right. I'm trying to figure out which way that agreement cuts, because on the one hand, the trustee is adamantly saying, I didn't abandon it, and you shouldn't even say that I abandoned it. On the other hand, she's saying, you go ahead and pursue the case in your own. Which way does that cut, and what does that — First of all, first of all, I think Judge Torres got it partly right on that, because she really didn't consider it and said it really ought not to be considered, because it's the discharge from the bankruptcy court that needs to be — because otherwise, you sitting in the Southern District, and even in the Second Circuit, are going to be subjecting that discharge to review. But my answer to Your Honor is, if you look at the language, she says, based on the information provided by my office by Mr. Mayor at this point in time, it is not possible for him to determine when the matter will be concluded. Therefore, I'm willing to close the bankruptcy case and not administer the asset at this time. This will allow you and your present counsel to continue with the litigation without any delay or jeopardy. So she's saying — and when she says jeopardy, without jeopardy, she's saying, you're going to be in and I'm going to be out until the end of the case, because she goes on. Then I'm going to claim my money for the creditors. However, I can only do so if I'm assured that should the amount you collect from the litigation generates a significant distribution to unsecured creditors, you will consent to the reopening of the case and not claim the litigation was abandoned by closing the case. At that point, at the end of the case, after you've prosecuted it and you've received your collection, you will not — if I choose to reopen, you will not claim that I abandoned the case. But in every other respect, she — first of all, she doesn't reveal it. In every other respect, she abandons it. She closes the case and says it's fully administered. There are no assets, no property to be distributed. And she tells Judge Torres, you know, that I'm out, and Mr. Ashmore is in. He's the one. Is that something that a trustee is permitted to do? Well, that's an issue for the bankruptcy court, but I don't think it's an issue for either Judge Torres — and I think she recognized that — or this court, because you would then be in the reciprocal position of the Cain decision, where there was a Southern District bankruptcy or a New York bankruptcy court that issued a discharge. And similarly, there was an inchoate claim of equitable distribution and a divorce action. And she didn't list the equitable distribution claim in the Schedule B, but she listed the divorce action in herself. And the Third Circuit in Cain said, we don't — we can't review the discharge. I understand, but I'm not — excuse me. I'm not — this is not about the issue that I think you've been talking about all along. I'm just trying to find out, are you relying on that agreement? Because at least in a vernacular sense, maybe not in a technical sense, that's the clearest evidence of some abandonment, or at least abandonment in the sense that the trustee acknowledges, you should be the one to go forward, and then we'll divvy up the money at the end. Yes. And if that's something that a trustee can do, that might win the case for you. Is that an argument you're making? Do you think that's not — that's frivolous because a trustee shouldn't do that? No. In our brief, we made the argument that while it didn't constitute the abandonment, it evidenced the abandonment. Because what — But it's a funny kind of abandonment to say — I mean, normally, abandonment is when the trustee effectively or explicitly says, we don't want this. It's worthless. I mean, it's easier for me at least to conceptualize when it's not a chosen action but an actual thing. Your stamp collection is a bunch of crap, and we don't want it. And then it turns out long after the fact that the stamp collection has some valuable stamp in it, and it's worth millions of dollars. Right. That's what normally constitutes abandonment. But to say — for the trustee to say, you know, actually, this might have some value to it, but I want you, the bankrupt, to go out and try to maximize that value, and then we'll divvy it up later. That strikes me as at least unconventional. Well, also, this circuit is held in, I think, charge — it's in our brief that abandonments of this kind — in other words, when there's adequate disclosure and there has been a decision not to administer the asset on behalf of the estate by the trustee, it's an abandonment, and it's irrevocable. You can't do what she said. Revocable or conditional? It's irrevocable because it can't be revoked is the language. It can't be revoked? It can't be revoked because what Judge Lynch is pointing out is that — and there are a couple of circuits which we also cited in our brief. There are a couple of circuits that say it's an abandonment. When there's a discharge and it's not administered, there's an abandonment. But you can revoke it under 60B at the end if you've reserved an interest in — if the trustee has reserved an interest in the fruits of the lawsuit, you can revoke it if it meets the standards of Rule 60B. The Second Circuit has not said that. So we have said in our brief that this was probably an irrevocable abandonment. But it does evidence. It points out that she knew, the trustee knew she was abandoning it because she was telling Ashmore — and by the way, Ashmore was unrepresented at the time when he signed this. Judge Torres had put a deadline of two days later, September 18th, that if she wasn't told who was in the case, she was going to dismiss it with prejudice. So Mr. Ashmore was sitting there confronted with this thing, knowing if he didn't sign it in two days, he might lose his case. So this letter, in my view, whether it's proper or improper, evidences her explicit intent to abandon. And that, by the way, is what distinguishes this case from Ayazi. In Ayazi, Your Honor, and Judge Gariffas said that there was no explicit intent to abandon the case. So Ayazi, in addition to being unpublished and not controlling, is also distinguishable. Thank you. Thank you, Your Honor. Good morning, Your Honor. Zachary Fassman on behalf of the defendant appellees CGI and CGI Federal. If we were to find that there was no appellate jurisdiction, and you and the trustee settle for something that Mr. Ashmore thinks is inadequate, how would Mr. Ashmore appeal the May 9th, 2016, decision dismissing the suit? Judge Katzmann, as a former party to this lawsuit, he brought this lawsuit. Then he lost control of it in the bankruptcy. As a former party, I think he has the right to appeal it. I mean, I don't think that there's any problem with that. We're not contending that— He has a right to appeal a settlement between— He has a right to appeal the 41A dismissal that would have to happen to consummate the settlement. As to the settlement itself and its fairness, we're over across the river in Newark in the bankruptcy court, and he certainly has the right to object to the settlement in the bankruptcy court. How would that work? If the bankruptcy court approves the settlement and the District of New Jersey and the Third Circuit affirm before the Second Circuit has an opportunity to review Judge Torres' May decision, if the circuit were to reverse Judge Torres' decision, would Ashmore then be able to seek relief from the bankruptcy settlement in the Third Circuit? Well, that's why this case has become a quagmire for us as well as for the other side. We've been going through this for a long time. I think the answer to that is yes, but it's a very difficult set of circumstances because there is overlapping jurisdiction. We've argued about this both before Judge Torres and before Judge Papalia, who has the case in the bankruptcy court. I mean, in a sense, if it's a quagmire, does it make sense now for us to just review the appeal, to avoid these procedural complexities? Your Honor, I would be delighted, although we have said, as we have to, because we don't think that this is an appealable collateral order. That's the law. But it would certainly help and aid the ultimate resolution of this case to hear from the court on that subject. And I'd be happy to turn to the merits instead of talking about the jurisdiction. This is one of those cases where both sides may want us to adjudicate on the merits, but, well, I guess this isn't a case where you thought this up. This was sui sponte of our motions panel. Well, actually, what happened, Judge Lynch, was that we were all reading Beneficial Finance v. Cohen and its various branches just before the July 4th weekend last year when, at about 4 o'clock in the afternoon, we got an emergency motion for a stay, and we spent the entire weekend briefing that issue. It got sent to the motions panel, and having been around the court enough to know, I figured the motions panel would tell us if it wanted to hear about jurisdiction. Whoever thought it up, it's now before us, and we have to resolve it since it's a matter of our jurisdiction. Of course. One way or the other, and we have to resolve it according to what the law is.  I would certainly be happy to have it decided on the merits, but I don't think, as we've said in our brief, and I won't belabor it, we don't think this is an appealable collateral order. I mean, the notion in Will v. Hancock and the Fisher case that Judge Pooler sat on, I mean, this is not an appealable collateral order. Let me turn to the merits for just a minute, just in case you decide to get that far. Mr. Herbst is not correct, or is not correct in one respect, and that is at the time IASI was decided, which is on all fours with this case, and has been approved by a panel of this court, including the panel that Judge Lynch sat on. When that was decided, there are two appellate decisions on point, and they're cited, they're the first cases cited on page 42 of our brief. They're First Circuit and the Eighth Circuit case. I mean, this has been the law, and Judge Garofis is entirely correct in his holding that, look, the vast majority of courts have said exactly this, that you have to list an asset on the schedule of assets and liabilities in order that it be returned to you at the end of the case by operation of law. And Mr. Herbst, in his brief and in his arguments throughout this case, has said, well, he was a pro se debtor, he didn't know anything. I don't ask you to do this now, and perhaps your clerks want to do this, but if you turn to Appendix 104, it is the last schedule in the schedules in this case, and it says, it has a column that says assets, and it has a column that says liabilities. He said all of his assets are worth $2,800, and he has $300,000 in debt. Look, you don't have to be a genius to figure out that if you have a lawsuit where the ad damnum is about $1.5 million, you have to list that in terms of being honest with your creditors. What happens when you don't list that is very clear, and it's something that Judge Lynch alluded to, which is if you list no assets or $2,800, the bankruptcy court looks and says, this is a no-asset case, and notifies all the creditors who you've listed that this is a no-asset case. Chase Bank, American Express, this one, that one, the other one, and they say, okay, it's a no-asset case, so write off the debt and let's get out of here. And that's what happened. He had $300,000 worth of debt. That's all the creditors knew until 2016 when this was reopened, and there were a couple of creditors who said, oh, yeah, I remember this. We should go forward and file something here. But that's what happened, and that is the problem here. If the purpose of imposing the strict disclosure requirements on debtors is to enable trustees to identify and investigate assets, I understand that. In this case, your adversary says that the trustee was aware of everything that needed to be known. Well, that's true. She became aware because he tried to dismiss his bankruptcy case without explanation. She came back to him and said, why are you doing this? And he said, oh, yeah, well, I have this lawsuit here. And she said, I'm not giving it to you. They went before bankruptcy judge Stern in Newark, and Mr. Ashmore argued that he wanted control of the case. And bankruptcy judge Stern said, no, it's not in the best interest of the state. Then she turns around. I don't know how this happened. But she turns around and enters into this letter agreement with him, which you've already spoken about. But if she wants to abandon an asset, there's a way to do that. There is, under 554A and B, she has to give notice to the U.S. trustee. She has to tell the creditor she's abandoning an asset. And she has to, if someone wants a hearing, she has to have a hearing and explain why. If she wants to enter into a settlement in a case, under Bankruptcy Rule 9019, she has to notify the U.S. trustee, she has to notify the creditors, and she has to, if they want a hearing, she has to attend a hearing and explain it. You can't do this. You can't enter into some kind of letter agreement where you're half- we agree that you can't enter into a letter agreement where you're half in and you're half out. And that's the whole point of this. What's going on here, because this was never disclosed, and, by the way, his 1.5 percent interest in a private company that he had at the time from filing a subsequent whistleblower lawsuit in the settlement, those-neither one was disclosed. So every creditor found out he has no assets. They all went away. He got a bankruptcy discharge, by the way, of $300,000 of his debts, and nobody found out about it. This is a classic case about why IASI is right. Thank you very much. Thank you. Thank you. I think that Mr. Fassman's concession that there was complete and full and adequate disclosure should dispose of this case and should lead to a reversal, because that's the reason for this. And the $8,500 that was undisclosed in another case is really not an issue here. That's an issue for the bankruptcy court. This-the holding below that is-that needs to be corrected is solely that. If you don't-if you fully and adequately disclose and the trustee fully and adequately investigates and makes a-and, by the way, she told the bankruptcy judge, you know, there's a settlement about to be made. That was wrong. That's why she wanted-she wanted and was considering it. When she found out, and that's in the letter agreement that I just read you, when she found out that there was no settlement to be had immediately and she couldn't find a lawyer to take the case, she gave it-she gave it away. She abandoned it. So I'm asking this court to-to-to exalt substance over form and hold that you-you-as long as you list it and-and you then disclose all the details that the trustee makes, and the trustee makes an informed decision and-and-and does not administer it, that's abandonment. That-that's the part of the disclosure part on 521A1, which includes all three parts, includes the SOFA. That's the part that needs to be fixed, and I'm-I'm asking that it be-asking this court to do that. She-she being the trustee, there is one point I wanted to make. If you look at the old Schedule B- You're coming close to the end of your time, so go ahead. It-it basically says other personal property and other contingent unliquidated claims, including tax refunds, counterclaims of the debtor, and rights to set off claims, which this wasn't. And it also has a-a-a place for current value of whatever this property is. Mr. Fassby believes that the value of this case is zero. He has said that to you in his brief, that it's worthless. It has no va-no merit, so it's worthless. What was this pro se debtor supposed to put down? Assuming he even thought, which he didn't, that it qualified as a refund or counterclaim of the debtor or other personal property, what was he supposed to put down for the-for-for the value? And-and that's what Kane says. The Third Circuit case, it says the equitable distribution, there was no value. It was inchoate. It was contingent. And so by listing the lawsuit, that gives the trustee what she needs to go investigate the claim and find out if it's valuable and worth pursuing. Thank you. Thank you both for your arguments. The court will reserve decision.